FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 21 2014 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROY TAYLOR,

                Plaintiff,

– against –

LINDA SWIFT, ET AL.,

                Defendants.

**MEMORANDUM & OPINION**

12-CV-5623



**Appearances:**

For Plaintiff:

    *Pro Se*
    13A0472
    Clinton Correctional Facility
    Box 2000
    Dannemora, NY 12929

For City of New York Defendants:

    Jeffrey S. Dantowitz
    Law Department, City of New York
    100 Church Street
    New York, NY 10007

**JACK B. WEINSTEIN, Senior United States District Judge:**

I.    Introduction........................................................................................................... 2
II.   Facts..................................................................................................................... 2
    A.   Plaintiff's Allegations.................................................................................. 2
    B.   Grievance Procedure................................................................................... 4
III.  Procedural History................................................................................................ 5
IV.  Law....................................................................................................................... 7
V.   Application of Law to Facts.................................................................................. 8
VI.  Conclusion............................................................................................................ 11



I.   Introduction

Roy Taylor, an incarcerated *pro se* plaintiff, brings seven unrelated constitutional claims against various defendants. *See* 42 U.S.C. § 1983. Most, but not all, of plaintiff's claims assert wrongdoing by jail officials at Rikers Island ("City Defendants"). Defendants moved to dismiss all claims on assorted grounds. *See* ECF No. 22, Mar. 7, 2013 (statute of limitations); ECF No. 41, June 3, 2013 (failure to state a claim and failure to exhaust administrative remedies). The motions to dismiss were converted to motions for summary judgment at a March 6, 2014 hearing. *See* ECF No. 68. Defendants have since filed renewed motions for summary judgment. ECF No. 69, Mar. 27, 2014; ECF No. 74, Mar. 27, 2014.

Addressed here is City Defendants' contention that two of plaintiff's claims—(1) jail officials failed to protect him from a beating by other inmates, and (2) jail official used excessive force against him—must be dismissed because plaintiff failed to exhaust administrative remedies.

Objectively, a reasonable person in plaintiff's position would not conclude that there were administrative remedies available before bringing a federal action based on these two claims. Subjectively, plaintiff did not believe that there were such administrative remedies. City Defendants' motion is denied.

II.   Facts

A.   Plaintiff's Allegations

Plaintiff's failure-to-protect claim stems from a dispute he allegedly had with jail authorities concerning food service in May 2012. Compl., *6. He was upset that, under the claimed indifferent supervision of Rikers Island officers, members of the Crips gang served him and other non-gang members "tiny food portions while serving gang members large food

portions." *Id.* Shortly after plaintiff sent an anonymous complaint to the Correction Commissioner, officers assembled the inmates in plaintiff's housing unit and admonished them collectively: "Someone dropped a slip to central office[,] and when we get heat, the entire unit get heat . . . . Any inmate believes the above problem is going on speak now." *Id.* Plaintiff's complaint does not indicate whether he spoke up.

The day after this chiding, it is alleged that plaintiff and two other non-Crips-affiliated inmates "were victims of gang assault where [plaintiff] & [another inmate] got cut & stabbed." *Id.* While the attack was occurring, plaintiff claims that "[Correction Officer] Morgan allowed the Crips to act with impunity and . . . waited 20 to 30 minutes to press the alarm and . . . [Correction Officer] Ballart[,] who was in [the] Bubble, failed to open [the] door for our safety when the Crips were jumping on us, and [failed] to use mace to breakup this 'gang assault.'" *Id.*, *7.

Injuries to plaintiff's knees, arm, leg, back, torso, hand, and neck allegedly resulted from the attack. *Id.*, *6.

The excessive force claim arises out of an incident that occurred three months later. Ordinarily, after being escorted from the showers to his locked cell by a jail official, plaintiff would "place[] his hands through the feedup flap to be uncuffed." *Id.*, *7. On August 9, 2012, however, he asserts he lost his footing inside the cell in the midst of uncuffing, causing him to withdraw his wrists momentarily from the open slot. *Id.*, *7. According to plaintiff, defendant Correction Officer Benbow "panic[ked]" and "began yanking & pulling cuffs shouting 'Hell no, your [sic] not taking my cuffs.[']" *Id.* Plaintiff yelled out in pain and explained that he had simply slipped, but the officer continued pulling on the cuffs. He asserts that this gratuitous yanking was done "maliciously" and "to cause harm." *Id.*, *8. Defendant used so much force

tugging on the cuffs, according to plaintiff, "that [defendant] scraped chunks of skin off [his] hands and fingers." *Id.* His injuries were sufficiently severe, he asserts, to require "transport[ation] to urgent care at West Facility at Rikers Island for a skin graft." Doctors treated plaintiff's injuries daily and ordered that he use a sling for a month. *Id.*

There is no evidence that plaintiff filed grievances related to either of these incidents before bringing this lawsuit.

**B.     Grievance Procedure**

New York City Department of Correction Directive 3375R-A established the Inmate Grievance Resolution Program in place at the time of plaintiff's alleged injuries. ECF No. 42, June 3, 2013, Decl. in Supp. of City Defs.' Mot. to Dismiss, ¶ 2; *see also* DOC Directive 3375R-A, available at http://www.nyc.gov/html/doc/downloads/pdf/3375R-A.pdf (accessed May 20, 2014).

Under DOC Directive 3375R-A, specified categories of inmate grievances are "Non-Grievable." *See* DOC Directive 3375R-A, § II.C. These include the kind of complaints of violence against an inmate made in the above two claims. The policy reads, in relevant part:

> Inmate *allegations of assault or harassment by either staff or inmates are not grievable* under the grievance mechanism. . . . Since no level of review in the grievance process is adversarial, any portion of a complaint in which the remedy sought involves the removal of a staff person from an assignment, or the censure, discipline or termination of a staff person, is not grievable. The underlying complaint is *grievable unless it constitutes assault, harassment or criminal conduct.*

*Id.*, §§ II.C.2-3 (emphasis added).

To initiate a grievance, a prisoner must fill out one of two forms: an "Inmate Interview Slip" (Former #143, Attachment D) or an "Inmate Grievance Form" (Form #7101R, Attachment E). The former form instructs inmates to, "State briefly what [they] wish to discuss," and provides six lines after the prompt: "Please grant me an interview regarding _____ ." *Id.*, Attachment D. The "Inmate Grievance Form" provides five lines on which inmates are instructed: "Please describe problem as briefly as possible." *Id.*, Attachment E.

Upon receipt of an inmate complaint, jail officials conduct a threshold assessment of whether the matter is grievable. DOC Directive 3375R-A, § IV.B.1.a. Only if a matter is determined "grievable" is the complaint numbered, logged, investigated, and documented. *Id.* A cognizable grievance then advances to the "First Step" informal and formal resolution stages. *Id.*, §§ IV.B.1.a-d. If a matter is determined to be non-grievable, jail officials "communicate the determination to the inmate, via Form #7114, Non-Grievable Complaint (Attachment G), along with information on what process is available to address the matter of concern." *Id.*, §§ IV.B.1.a.

An appeals process exists for inmates who are dissatisfied with the resolution of their grievance after a "First Step" formal hearing. *Id.*, §§ IV.B.1.d.iii. ("Procedure for Filing an Appeal"). It is unclear whether there is an appeal mechanism for an inmate whose complaint is determined to be "Non-Grievable" at the threshold screening stage. *Id.*

### III. Procedural History

City Defendants moved to dismiss the two claims on the theory that plaintiff failed to exhaust administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), before filing this action in federal court. *See* ECF No. 43, June 3, 2013; 42 U.S.C. § 1997e(a). In support of this motion, City Defendants submitted DOC Directive 3375R-A with their memorandum of law. *See* Decl. of Jeffrey Dantowitz, Ex. 1, ECF No. 42-1, June 3, 2013.

After the motion to dismiss was converted to a motion for summary judgment on March 6, 2014, *see* ECF No. 68, defendants filed a new memorandum reiterating the previously urged failure-to-exhaust arguments. *See* ECF No. 72, Mar. 27, 2014. City Defendants again submitted DOC Directive 3375R-A along with their motion for summary judgment. *See* ECF No. 71-2, Mar. 27, 2014.

On April 17, 2014, the court ordered supplemental briefing on the availability of administrative remedies for inmates in New York City Department of Corrections custody. ECF No. 77, Apr. 17, 2014. The parties were directed to language in the grievance procedure addressing "allegations of assault," and were asked to consider its effect on plaintiff's failure-to-protect and excessive force claims. *Id.*

City Defendants withdrew their non-exhaustion argument with respect to plaintiff's excessive force claim, conceding that plaintiff's claim against Defendant Benbow "appears to assert an actual [non-grievable] assault by this Defendant." ECF No. 79, Apr. 25, 2014.

With respect to plaintiff's failure-to-protect claim, however, City Defendants still maintain that plaintiff was obliged to file a grievance. *But cf. Oates v. City of New York*, 2004 WL 1752832 (S.D.N.Y. Aug. 4, 2004) ("Turning first to the claim that DOC personnel failed to protect the plaintiff from the assault that led to his injuries, defendants now candidly . . . concede that this claim could not have been pursued under the DOC grievance procedures.").

## IV. Law

The Prison Litigation Reform Act ("PLRA") requires exhaustion of available administrative remedies before a federal action can be brought. It reads:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Proper exhaustion" generally requires "using all steps that the agency holds out, and doing so properly." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

The law recognizes that there are often "situations in which administrative remedies are not actually 'available' under the PLRA." *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004). The district court "must consider whether administrative remedies were in fact 'available' [to the prisoner] in light of his explanation for the alleged failure to exhaust." *Id.*

Even in circumstances where "administrative remedies may have been available," there are "certain 'special circumstances' in which . . . the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004). Where a prisoner's failure to exhaust available administrative remedies results from the prisoner's "reasonable [though mistaken] interpretation of [Department of Corrections] regulations," the exhaustion bar may be excused. *Hemphill v. New York*, 380 F.3d 680, 689 (2d Cir. 2004); *Giano*, 380 F.3d at 679 (same).

V.  **Application of Law to Facts**

The question whether Rikers Island officials would have accepted a hypothetical failure-to-protect grievance, as City Defendants now urge, is immaterial. A reasonable inmate

attempting to follow DOC Directive 3375-R would conclude that no administrative mechanism existed through which to obtain remedies for the alleged attack.

There is no dispute that plaintiff's claim concerning the alleged May 2012 attack involves an "allegation *of* assault . . . by either staff or inmates." *See* Directive 3375R-A (emphasis added). The grievance policy designates inmate complaints involving such misconduct as "Non-Grievable." *Id.*

City Defendants nevertheless insist that administrative remedies would have been available to plaintiff had he filed a grievance, and that plaintiff was obliged to exhaust prison channels as a prerequisite to bringing constitutional claims in federal court. Their argument hinges on the meaning of the word "of." An earlier iteration of DOC Directive 3375-R promulgated in 1985 provided that "[a]mong the issues that are non-grievable are . . . complaints *pertaining to* an alleged assault or verbal harassment"; the newer directive declares non-grievable "inmate allegations *of* assault or harassment." ECF No. 79, *3 (emphasis added). "[W]hile Plaintiff's allegations might 'pertain to' an assault," City Defendants contend, "they do not constitute allegations 'of assault' *by these Defendants.*" *Id.* (emphasis added). "Of," they insist, was intended to signify "a much narrower type of conduct that is non-grievable." *Id.*

Lay inmates—many ill-educated or with mental health problems—cannot be expected to interpret regulations with the historical knowledge available to counsel or with the degree of semantic nuance upon which lawyers are trained to rely. *Cf. David v. Heckler*, 591 F.Supp. 1033, 1043 (E.D.N.Y. 1984) (emphasizing the need for government to use language in directives that is understandable to those affected). *See also* City of New York, *Educational Expansion on Rikers Island*, at http://www.nyc.gov/html/ceo/html/initiatives/justice_rikers.shtml ("On a typical day in FY07, 96% of eligible inmates aged 19-24 did not attend school while in custody on Rikers

Island. The majority of 19-21 year old inmates on Rikers Island are junior high or high school dropouts with poor reading and writing skills."); Michael Schwirtz, *Rikers Island Struggles With a Surge in Violence and Mental Illness*, N.Y. TIMES, Mar. 19, 2014, at A1; GARNER'S DICTIONARY OF LEGAL USAGE 628 (3d ed. 2011) ("However innocuous it may appear, the word *of* is, in anything other than small doses, among the surest indications of flabby writing . . . . The only suitable vaccination is to cultivate a hardy skepticism about its utility in any given context.").

City Defendants' position also overlooks the remaining text of the "Non-Grievable Issues" section of the Directive. As already noted above, *see* Section II.2, *supra*, immediately after explaining that an "allegation of assault . . . by either staff or inmates" is non-grievable, the Directive elaborates that an inmate complaint "is grievable unless it constitutes assault, harassment *or criminal misconduct.*" DOC Directive 3375R-A, § II.3 (emphasis added).

The sort of wrongdoing alleged by plaintiff in this civil action—that defendants acted with deliberate indifference to serious harm suffered because of an ongoing gang assault—*is* criminal misconduct. *See* 18 U.S.C. § 242; *United States v. Gray*, 692 F.3d 514, 518 (6th Cir. 2012) (upholding criminal conviction under Section 242 for deliberate indifference to prisoner's welfare); *United States v. Gonzales*, 436 F.3d 560, 573 (5th Cir. 2006) (same); *United States v. Walsh*, 27 F.Supp.2d 186 (W.D.N.Y. 1998) (same). City Defendants' insistence that plaintiff could have grieved his failure-to-protect claim denigrates and disregards 18 U.S.C. § 242, one of the few weapons in "the entire arsenal of criminal laws available to the federal government to punish those who deprive others of civil rights secured by the Constitution or federal law." *See* Arthur B. Cladwell and Sydney Brodie, *Enforcement of the Criminal Civil Rights Statute, 18 U.S.C. Section 242, in Prison Brutality Cases*, 52 GEO. L. J. 706 (1964). Allegations like those

brought by plaintiff must be understood for what they are: accusations of civil delicts *and* criminal misconduct.

At the most general level, City Defendants' contention that administrative remedies were "available"—provided plaintiff's grievance artfully specified that he was not complaining "'of assault' *by these Defendants*," see ECF No. 79, *3 (emphasis added)—misapprehends the basic structure of the Rikers Island grievance procedure. Their argument presupposes that a grievant brings an allegation "of assault" *against* an individual defendant or wrongdoer. But such a practice is foreign to the grievance procedure. Prisoners submit forms that require them to "State briefly what [they] wish to discuss" and to "Please describe problem as briefly as possible," *see* DOC Directive 3375R-A, Attachments D and E, not to makes charges against particular individuals. *Compare* DOC Directive 3375R-A, § II.C.3. ("Since no level of review in the grievance process is adversarial, any portion of a complaint in which the remedy sought involves . . . the censure, discipline or termination of a staff person is not grievable") *with* FED. R. CIV. P. 10(a) ("Every pleading must have a caption with . . . a title [that] must name all the parties[.]").

Any grievance that plaintiff might have filed in connection with the May 2012 attack would have offered a "concise, specific description" of his problem—*i.e.*, that prison officials stood idly by while he suffered an "assault . . . by [other] inmates." *See* DOC Directive 3375R-A. Absent a requirement that inmate grievances name defendants or specify particular legal theories of liability, complaints like plaintiff's fall outside the scope of this institution's grievance procedure. *Accord Espinal v. Goord*, 558 F.3d 119, 121 (2d Cir. 2009) ("The pro se prisoner cannot be expected to infer the existence of an identification requirement in the absence of a procedural rule stating that the grievance must include the names of the responsible parties. Where New York's grievance procedures do not require prisoners to identify the individuals

responsible for alleged misconduct, neither does the PLRA for exhaustion purposes.") (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

Assuming, *arguendo*, that failure-to-protect grievances will be accepted by Rikers Island officials—and City Defendants have presented no evidence to that effect—plaintiff's failure to exhaust administrative remedies does not bar his Eighth Amendment claim. The PLRA's exhaustion requirement does not apply where the incarcerated plaintiff's failure to exhaust available administrative remedies results from a "reasonable [though mistaken] interpretation of [Department of Corrections] regulations." *Hemphill*, 380 F.3d at 689; *see also Giano*, 380 F.3d at 679 (same). Undergirding this rule is the venerable principle of lenity: that ambiguities in regulations limiting individuals' constitutional and statutory rights should be resolved in favor those seeking to defend or vindicate those fundamental interests. *See United States v. Bass*, 404 U.S. 336, 347 (1971) (collecting cases discussing doctrine of lenity). Even if plaintiff erred in interpreting the scope of DOC Directive 3375R-A, his mistake was reasonable and his non-exhaustion does not provide a basis for dismissing the claims asserting lack of protection from physical attacks and excessive use of force by prison authorities.

## IV. Conclusion

The motion of City Defendants to dismiss because of plaintiff's failure to exhaust administrative remedies is denied.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: May 20, 2014
Brooklyn, New York